United States District Court
Southern District of Texas
**ENTERED**
September 28, 2022
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ORIN L.,[1] | § § § | |
| *Plaintiff,* | § § | No. 4:21-cv-02407 |
| v. | § § | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | § § § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND ORDER

Plaintiff Orin L. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").[2] The Parties filed cross-motions for summary judgment. Pl.'s MSJ,

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On February 28, 2022, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Def.'s Consent, ECF No. 7; Pl.'s Consent, ECF No. 8; Order Transferring, ECF No. 8.

ECF No. 10; Def.'s MSJ, ECF No. 11. Plaintiff challenges the Administrative Law

Judge's ("ALJ") determination, arguing that the ALJ's finding that Plaintiff is not

disabled was not supported by substantial evidence and is the result of legal errors.

Pl.'s MSJ, ECF No. 10-1. Defendant counters, asserting that the ALJ carefully

reviewed the record, delineated his findings with attention to the full record, and

pointed to substantial evidentiary support for his findings. Def.'s MSJ Brief, ECF

No. 11. Based on the briefing, the law, and the record, the Court determines that

substantial evidence supports the ALJ's determination. Therefore, Plaintiff's motion

for summary judgment is denied and Defendant's motion for summary judgment is

granted.

## I.   BACKGROUND

Plaintiff is 62 years old, R. 60,[3] and completed four or more years of college.

R. 174. Plaintiff previously worked as a site supervisor, account executive, and

industrial organization manager. R. 16. Plaintiff alleges a disability onset date of

June 11, 2019. R. 10. Plaintiff claims he suffers from physical impairments. R. 173.

On July 18, 2019, Plaintiff filed his application for disability insurance

benefits under Title II of the Act. R. 145–46. Plaintiff based[4] his application on

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 6.

[4] The relevant time period is June 11, 2019—Plaintiff's alleged onset date—through December
31, 2021—Plaintiff's last insured date. R. 10. The Court will consider medical evidence outside
this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant

degenerative disc disease, hypertension, unknown arthritis back, and unknown leg problem. R. 173. The Commissioner denied his claim initially, R. 82–85, and on reconsideration, R. 88-90.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 28. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 28. The ALJ issued a decision denying Plaintiff's request for benefits.[5] R. 7–17. The Appeals Council denied Plaintiff's request for review, thus upholding the ALJ's decision to deny disability benefits. R. 1-3.

Plaintiff appealed the Commissioner's ruling to this court. ECF No. 1.

## II.  THE STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a

---

time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step four. R. 17. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. R. 12 (citing 20 C.F.R. 404.1571 *et seq*.). At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis and degenerative disc disease. R. 12 (citing 20 C.F.R. 404.1520 (c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 14 (referencing 20 C.F.R. 404.1520(d), 404.1525, and 404.1526). The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b). *Id*. At step four, the ALJ determined that through the date last insured, Plaintiff can perform past relevant work. R. 16. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 17.

party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.*

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza*, 219 F.3d at 393. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   THE SHIFTING BURDEN OF PROOF IN A DISABILITY CASE.

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or

can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through

medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C.

§ 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable

of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843,

2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954

F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset

of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v.*

*Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

The Commissioner applies a five-step sequential process to determine

disability status. *Id.* The claimant bears the burden of proof at the first four steps to

establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061,

at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to the Commissioner at step five

to show that the claimant can perform other work. *Id.* The burden then shifts back to

the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner

determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises two issues. First, Plaintiff argues that the ALJ failed to develop

the record regarding Plaintiff's radiculopathy[6]/lower extremity issues and upper

---

[6] Radiculopathy is caused by a pinched nerve in the spine. More specifically, it happens when one

extremity issues. ECF No. 10-1 at 4. Second, Plaintiff asserts that the ALJ failed to properly weigh the medical opinion evidence as the applicable regulations require. *Id*. Defendant counters that substantial evidence supports the ALJ's determination regarding Plaintiff's upper and lower extremities issues and the ALJ properly considered the medical opinion evidence. ECF No. 11 at 2. The Court will consider each argument in turn.

**A. The ALJ Properly Conducted Plaintiff's RFC Analysis.**

Between the third and fourth steps of the sequential analysis, the ALJ must decide the claimant's RFC, which is defined as the most the claimant can still do despite his [or her] physical and mental limitations . . . based on all relevant evidence in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

When making the RFC determination, the ALJ must consider all medical opinions contained in the record. *Winston*, 755 F. App'x 399; 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at

---

of the nerve roots (where the nerves join the spinal column) is compressed or irritated. Radiculopathy, THE CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/22564-radiculopathy (last visited Sept. 6, 2022).

*8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). The revised Social Security guidelines[7] require consideration of several factors, the most important of which are consistency and supportability. 20 C.F.R. § 404.1520c(b).[8] Under these guidelines, the ALJ must articulate how persuasive he finds each of the opinions in the record. 20 C.F.R. § 404.1520c(b). [9] As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the persuasiveness of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

## B. The ALJ's Failure To Order A Consultative Examination Was Not Error.

Plaintiff argues that the ALJ did not fulfill his duty to develop the record because he failed to order consultative examinations. ECF No. 10 at 4. Specifically, Plaintiff contends that an electromyography ("EMG")[10] should have been ordered to

---

[7] Because Plaintiff filed his claim on July 18, 2019, the ALJ was required to follow the resvised guidelines in conducting Plaintiff's RFC assessment. 20 C.F.R. § 404.1520c(a); *Winston*, 755 F. App'x at 402, n. 4.

[8] These factors include supportability, consistency, the physician's relationships with Plaintiff, the physician's specialization, evidence showing the medical source is familiar with the other evidence in the claim, or that the medical source understands the disability program's policies and evidentiary policies. *Id.*

[9] The revised guidelines have eliminated the former requirement that the ALJ give deference to the opinions of treating physicians. *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020) (explaining that despite new regulations, previous decisions are still relevant as supportability and consistency have always been the most important considerations.).

[10] EMG is a diagnostic procedure to assess the health of muscles and the nerve cells that control

confirm a diagnosis of radiculopathy and a consultative examination should have been ordered to determine the functionality of Plaintiff's upper extremities. *Id.* at 6.

An ALJ's decision lacks substantial evidence "if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced Plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). The question of whether the ALJ fully and fairly developed the record depends on whether there was sufficient evidence in the record for an informed decision. "As long as sufficient evidence does exist, the ALJ has no duty to request additional evidence." *Barnes v. Astrue*, No. H-07-4377, 2008 WL 5348225, at *9 (S.D. Tex. Dec. 22, 2008). Thus, "the decision to order a consultative examination is within the ALJ's discretion." *Flynn v. Saul*, No. 4:19-CV-03523, 2020 WL 4818863, at *5 (S.D. Tex. Aug. 19, 2020) (quoting *Cruz v. Colvin*, No. EP-12-CV-00179-ATB, 2013 WL 3338591, at *9 (W.D. Tex. July 1, 2013). "A consultative evaluation becomes necessary only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Brock*, 84 F.3d 728 (internal quotation marks and citation omitted).

"[R]eversal is appropriate only if the claimant shows that he was prejudiced

---

them (motor neurons). EMG results can reveal nerve dysfunction, muscle dysfunction or problems with nerve-to-muscle signal transmission. Electromyography (EMG), THE MAYO CLINIC, https://www.mayoclinic.org/tests-procedures/emg/about/pac-20393913 (last visited Sept. 7, 2022).

as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09–CV–156–Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010). Prejudice is demonstrated "by showing that Plaintiff 'could and would have adduced evidence that might have altered the result.'" *Torres v. Colvin*, No. 5:14-CV-34, 2015 WL 12571022, at *11 (S.D. Tex. Feb. 5, 2015) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

### 1. The ALJ was not required to order a consultative examination to obtain an EMG.

Here, Plaintiff contends that the ALJ erred in not ordering an EMG to confirm his treating physician's, Dr. Kantamani's, diagnosis that Plaintiff suffered from radiculopathy. ECF No. 10-1 at 6 (citing R. 16). In support of his argument, Plaintiff points to the ALJ's observation that "the record did not include an EMG confirming radiculopathy." *Id*. Plaintiff's argument appears to be that the ALJ's duty to develop the record was triggered because he noted the absence of an EMG in the record. However, Plaintiff identifies no precedent, nor is this Court aware of any, supporting the proposition that the absence of a diagnostic procedure alone triggers an ALJ's duty to further develop the record. To the contrary, the claimant bears the burden to prove his disability, which includes obtaining sufficient medical records to establish his disability. *See Gonzalez v. Barnhart*, 51 Fed. App'x 484 (5th Cir.2002) ("Generally, however, the duty to obtain medical records is on the claimant."); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (burden of proof lies with

claimant to prove disability).

Moreover, the ALJ is not a doctor and cannot order an EMG. Thus, what Plaintiff is seeking is a consultative examination. An ALJ is obligated to order a consultative examination only "where the record is devoid of substantial evidence to support an ALJ's conclusion." *Aronson v. Comm'r of Soc. Sec.*, No. 4:21-CV-00756-O-BP, 2022 WL 2135017, at *5 (N.D. Tex. May 31, 2022), *report and recommendation adopted*, No. 4:21-CV-00756-O-BP, 2022 WL 2134178 (N.D. Tex. June 14, 2022). This was not the situation here. Rather, there was ample evidence in the record for the ALJ to make his RFC determination, including the opinions of the examining state agency medical consultant ("SAMC") (Dr. Hadley, R. 269-72) and the non-examining SAMCs (Drs. Herman, R. 60-66, and Moore, R. 67-75). R. 15. On January 15, 2020, Dr. Hadley physically examined Plaintiff. R. 269-72. His observations included that Plaintiff could "ambulate effectively" and "did not exhibit an antalgic gait." R. 271. Dr. Hadley took x-rays of Plaintiff during the examination. R. 270. Significantly, none of the doctors who examined or reviewed Plaintiff's files—including Dr. Kantamani—ordered an EMG or otherwise indicated that an EMG was necessary to assess Plaintiff's limitations. Nor did Plaintiff request a consultative examination at the hearing. *Land v. Astrue*, No. CIV.A. H-11-02186, 2012 WL 9392189, at *8 (S.D. Tex. Oct. 9, 2012) (affirming ALJ's decision and noting plaintiff's failure to request a consultative examination).

Accordingly, the ALJ did not err in failing to order a consultative examination to obtain the results of an EMG for his RFC analysis.

> **2.** ***The ALJ did not err in failing to order a consultative examination regarding Plaintiff's upper extremity issues.***

Second, Plaintiff argues that the ALJ erred in not sufficiently developing the record regarding Plaintiff's upper extremity issues. ECF No. 10-1 at 6. In support of his position, Plaintiff points to Dr. Hadley's notation that "[t]here was past pointing and dysdiadochokinesis,"[11] R. 270, and Dr. Kantamani's opinion that Plaintiff "could not use the left upper extremity for reaching, handling, and fingering." ECF No. 10-1 at 6 (citing R. 285). Plaintiff's argument is without merit.

Significantly, Plaintiff does not contest that Dr. Hadley's notation indicates that the upper extremity issue described was a *past* and not a current issue for Plaintiff. *Id*. ("While this may or may not have been historical"). Further, Dr. Hadley gave no indication that Plaintiff suffered from any current limitations that might relate to this past upper extremity issue. R. 271.

Plaintiff's testimony also supported the ALJ's conclusion that he was not limited by any upper extremity issue. Plaintiff testified that he suffered from numerous issues—difficulty standing for more than ten minutes at a time, bending,

---

[11] Dysdiadochokinesia is the inability to perform rapid alternating muscle movements. Franklyn Rocha Cabrero & Oscar De Jesus, Dysdiadochokinesia, NATIONAL LIBRARY OF SCIENCE, https://www.ncbi.nlm.nih.gov/books/NBK559262/#:~:text=Dysdiadochokinesia%20(diadochoki nesia)%20is%20the%20inability,the%20fists%2C%20and%20foot%20tapping (last visited Sept. 19, 2022).

crawling, and sitting in traffic for long periods—but did not describe any issue with his upper extremities. R. 45-50. Plaintiff's argument that Dr. Kantamani's opinion that Plaintiff could not use the "left upper extremity for reaching, handling, and fingering" triggered the ALJ's duty to develop the record is unsupported. ECF No. 10-1 at 6 (citing R. 285). Dr. Kantamani provided no explanation for this opinion, R. 285 (leaving the portion of the form asking for an explanation supporting the limitation blank), which conflicted with Plaintiff's testimony, R. 45-50.[12] Again, Plaintiff did not request a consultative examination at the hearing. *Manzano v. Berryhill*, No. 4:16-CV-3496, 2018 WL 1518558, at *9 (S.D. Tex. Mar. 28, 2018) ("Where a claimant is represented by counsel at the hearing and her counsel fails to request a consultative examination or specify the information requiring further development, 'we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.'") (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)). Finally, none of the other doctors who provided opinions identified any similar limitation.

Therefore, based on the record, a consultative examination of Plaintiff's upper extremities was not necessary.

---

[12] It is worth noting that Dr. Kantamani submitted another treating source statement (but did not sign) opining that Plaintiff should never use either hand. R. 268. That Dr. Kantamini would prepare another opinion with markedly different limitation for Plaintiff is further evidence that his opinion was not persuasive.

Even if the ALJ erred in not developing the record as Plaintiff claims, "reversal is appropriate only if the [plaintiff] shows that he was prejudiced as a result of the insufficient record." *Hudspeth*, 2010 WL 3033891 at *12. "To establish prejudice, a [plaintiff] must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (quoting *Kane*, 731 F.2d at 1220). Here, Plaintiff argues only that "it is conceivable that a different conclusion" could have been reached, ECF No. 10-1 at 7, but makes no showing that ordering a consultative examination might have altered the ALJ's RFC determination as required. There was ample evidence for the ALJ to make his decision, including the opinions of three SAMCs, all of which supported a finding that Plaintiff could engage in light work.

Therefore, Plaintiff failed to show prejudice.

## C. The ALJ's Weighing of The Medical Opinion Evidence Did Not Prejudice Plaintiff.

Plaintiff argues that the ALJ improperly weighed the opinion evidence for three reasons. First, the ALJ's discussion of the supportability and consistency factors in evaluating Drs. Herman's and Moore's reports did not satisfy the requirements of 20 C.F.R. § 404.1520c(b). ECF No. 10-1 at 8. Second, the ALJ improperly considered Dr. Hadley's finding that Plaintiff was capable of light work in his explanation of the consistency factor. Third, the ALJ improperly interpreted

Plaintiff's magnetic resonance imaging ("MRI") in discounting Dr. Kantamani's opinion. ECF No. 10-1 at 8-9.

Pursuant to the revised rules for evaluating medical opinions, the ALJ is required to explain the persuasiveness of the medical opinions. 20 C.F.R. § 404.1520c(b). When evaluating whether a medical opinion is persuasive, the ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which "tend to support or contradict the opinion." See *id*. § 404.1520c(c)(1)–(5). The most important factors in this analysis are supportability and consistency. See *id*. § 404.1520c(a), (b)(2), (c)(1)-(2). The ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [his] determination or decision[,]" but is not required to explain how he considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2); *Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, at *6 (N.D. Tex. Dec. 4, 2020).

### 1. *The ALJ's error in considering the persuasiveness of Drs. Herman's and Moore's opinions did not prejudice Plaintiff.*

Plaintiff contends that the ALJ did not sufficiently explain how he determined that the Drs. Herman's and Moore's opinions were persuasive. ECF No. 10-1 at 8. The ALJ provided three reasons in his decision: (1) the opinions were well supported by the evidence of record; (2) the opinions are consistent with one another; and (3) the regulations consider the SAMCs to be highly qualified experts in Social Security

disability evaluation. R. 15. Plaintiff's primary contention is that this explanation does not satisfy the requirement that ALJ's explain their consideration of the consistency and supportability factors. ECF No. 10-1 at 8-9 (citing 20 C.F.R. § 404.1520c(b)(2)).

The supportability factor evaluates how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." § 416.920c(c)(1). Therefore, "supportability looks internally to the bases presented by the medical opinion itself." *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022).

Here, the ALJ's only explanation for his consideration of the supportability factor was that the opinions of Drs. Herman and Moore were "well supported by the evidence in the record." R. 15. Therefore, the ALJ erred to the extent he looked "to the evidence in the medical record [as a whole] as opposed to the evidence" Drs. Herman and Moore presented to support their opinions. *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022) (finding that ALJ's supportability analysis was in error because it did not "consider[] whether the opinion was supported by the objective medical evidence [the physician] provided as support for her opinion"). Consideration of the record as a whole goes to consistency and not supportability. *Id*. Furthermore, the ALJ's explanation gives no indication as to what portion of the record was considered in his supportability

analysis. R. 15. *See Cardenas v. Kijakazi*, No. 7:21-CV-0135, 2022 WL 2719044, at *8 (S.D. Tex. June 3, 2022), *report and recommendation adopted sub nom. Cardenas v. Saul*, No. 7:21-CV-135, 2022 WL 2715204 (S.D. Tex. July 12, 2022) ("the ALJ erred by failing to sufficiently explain consistency and supportability").

Notwithstanding the ALJ's erroneous explanation of his supportability analysis, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). For procedural error to serve as a basis for relief, Plaintiff must "show that prejudice resulted from [the] error." *Jones*, 691 F.3d 734-35. "Prejudice can be established by showing that the additional considerations 'might have led to a different decision.'" *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (quoting *Ripley*, 67 F.3d 557 n. 22). However, Plaintiff failed to identify any considerations that would have led to a different decision.

Quite to the contrary, Drs. Herman's and Moore's opinions referenced evidence supporting their conclusions. For example, both opinions noted that Plaintiff's "x ray show[ed] degenerative changes without acute radiographic abnormalities," R. 62, 71, Plaintiff was able to perform household chores and drive a car, R. 62-63, 71, Plaintiff walked with a normal gait, and Plaintiff was able to stand, sit, lift and carry objects, R. 64, 73. Therefore, the ALJ's failure to reference what the doctors relied on when discussing the supportability of these opinions was

harmless error and remand is not required on this basis.

The consistency factor evaluates the degree to which a medical opinion is in agreement "with the evidence from other medical sources and nonmedical sources in the claim." § 416.920c(c)(2). Therefore, analysis of consistency "is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." Although the ALJ's explanation is short, it satisfies the regulation's requirements. The ALJ found that there was a high degree of consistency between the non-examining SAMCs reports. R. 15. A review of Drs. Herman's and Moore's opinions confirms this. For example, the doctors' opinions were consistent regarding their assessment of Plaintiff's impairments, symptoms, the consistency of Plaintiff's statements regarding symptoms and the evidence in the file, and exertional limitations. *Compare* R. 60-65 *with* R. 67-75.

Furthermore, the ALJ also found that the non-examining SAMCs' opinions were "well supported by the evidence in the record." R. 15. Although the ALJ did not specifically identify the evidence in the record supporting Drs. Herman's and Moore's opinions, the ALJ's decision included ample discussion of record evidence that did. *See Gonzales v. Kijakazi*, No. 4:20-CV-00270, 2021 WL 3777181, at *3 (S.D. Tex. Aug. 3, 2021) (affirming ALJ because decision discussed evidence relevant to the consistency and supportability factors). The ALJ discussed that Plaintiff "remains capable of caring for his personal needs, preparing meals,

performing light household chores, operating a motor vehicle, [] shopping for groceries[, ] among other activities of daily living." R. 15 (citing R. 27-58 (Hearing Transcript); R. 199-211 (Sept. 3, 2019 Function Report)).

Therefore, the Court finds the ALJ's written decision adequately explains his consideration of the consistency factor because it discusses evidence that was consistent with Drs. Herman's and Moore's opinions. *See Gonzalez*, 2021 WL 3777181, at *3.

### 2. *The ALJ did not err in considering Dr. Hadley's opinion that Plaintiff could engage in light or sedentary work.*

Plaintiff argues that the ALJ erred in considering programmatic terms used in Dr. Hadley's opinion when analyzing its consistency. ECF No. 10-1 at 8. In explaining the persuasiveness of Dr. Hadley's opinion, the ALJ wrote that Dr. Hadley's opinion that Plaintiff could perform light work was "consistent with the opinions of the non-examining SAMCs." R. 15-16. Plaintiff's argument is that the regulations do not allow ALJ's to consider opinions that use programmatic language—light work and sedentary work—in evaluating the persuasiveness of an opinion. ECF No. 10-1 at 8. [13] Because light work and sedentary work are programmatic terms, Plaintiff concludes that it was error for the ALJ to consider

---

[13] 20 C.F.R. § 404.1520b(c) provides that statements "using our programmatic terms" are "inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act" and no analysis about how such evidence was considered will be provided even under 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017.").

them in his persuasiveness analysis.

Although Plaintiff's reading is plausible, the Court does not agree that 20 C.F.R. § 404.1520b(c) forbids the consideration of opinions' use of programmatic terms. *See Sadowski v. Comm'r of Soc. Sec.*, No. CV 18-13672 (ES), 2020 WL 7334225, at *4 (D.N.J. Dec. 14, 2020) (citing with approval ALJ's finding of consistency between medical opinions using programmatic terms); *Kerlin v. Astrue*, No. 3:09CV00173, 2010 WL 3937423, at *9 (S.D. Ohio Mar. 25, 2010), *report and recommendation adopted sub nom. Kerlin v. Comm'r of Soc. Sec.*, No. 3:09-CV-173, 2010 WL 3895175 (S.D. Ohio Sept. 29, 2010) (same).

Even if it were error for the ALJ to consider medical opinions' agreement on the use of programmatic terms in evaluating consistency, Plaintiff failed to carry his burden to "show that prejudice resulted from an error." *Jones*, 691 F.3d 734-35. "Prejudice can be established by showing that the additional considerations 'might have led to a different decision.'" *Newton,* 209 F.3d 458 (quoting *Ripley*, 67 F.3d 557 n. 22). Plaintiff makes no effort to show that additional considerations would have led to a different decision. Nor can he. Review of the record demonstrates that Dr. Hadley's opinion is consistent with those of Drs. Herman and Moore in numerous aspects. For example, each noted that Plaintiff had no persistent disorganization of motor function, R. 64, 73, 271, x-rays showed degenerative

changes without acute radiographic abnormalities, R. 64, 73, 270, and no limitations relating to the manipulation of objects, *id*.

Therefore, the Court will not remand on this basis.

### 3. The ALJ did not err in his assessment of Dr. Kantamani's opinion.

Finally, Plaintiff argues that the ALJ engaged in "impermissible layperson interpretation" of Plaintiff's MRI imaging in assessing the persuasiveness of Dr. Kantamani's opinion. This contention appears to be based on a misreading of the ALJ's decision.

In explaining his persuasiveness analysis, the ALJ took issue with Dr. Kantamani's reliance on Plaintiff's MRI to support his opinion regarding Plaintiff's limitations. R. 16. The ALJ wrote that the MRI "only shows *slight* effacement of the ventral thecal sac at L4-L5 and L5-S1," R. 16 (emphasis in original). Plaintiff argues that this indicates that the ALJ impermissibly interpreted the MRI imaging on his own. ECF No. 10-1 at 8-9. However, the ALJ did not interpret Plaintiff's MRI—nor could he, given that the MRI images were not included in the record. Instead, the ALJ relied on the interpretation of the MRI images provided in Dr. O'Connor's radiology report—which Dr. Kantamani ordered. R. 261 (noting slight effacement). The inconsistency between Dr. O'Connor's radiology report and Dr. Kantamani's description of it weighs against finding Dr. Kantamani's opinion persuasive based on both the supportability

and consistency factors. In any case, the ALJ did not engage in the impermissible layperson interpretation as Plaintiff complains.

Moreover, Dr. Kantamani's opinion regarding Plaintiff's limitations consists of a checklist form with little to no explanation. *See* R. 265-69, 283-86, 297-301. For example, Dr. Kantamani's opinion proposes that Plaintiff can never rotate his head and neck. R. 286. Not only has the Plaintiff failed to point to anything in the record supporting this limitation, but Dr. Kantamani leaves the section asking him to explain the support for this limitation entirely bank. R. 286. "The use of such checklist forms is generally viewed with disfavor among the federal courts of appeals and district courts within the Fifth Circuit when the forms are not adequately supported by any narrative citations to clinical findings." *Brown v. Astrue*, No. 11-2919, 2013 WL 620269, at *6 (E.D. La. Jan. 18, 2013); *see also Rollins v. Astrue*, 464 F. App'x 353, 357 n. 5 (5th Cir. 2012) (finding that "check-the-box" forms without additional explanations may be given less weight but reserving the determination for the ALJ); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating doctor's opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination . . ."); *Segovia v. Astrue*, No. H-11-0727, 2012 WL 948815, at *16-17 (S.D. Tex. Mar. 2, 2012) (finding that the ALJ properly rejected the opinion of a treating physician who marked answers next to pre-printed findings on

a form), *report and recommendation adopted*, 2012 WL 951543 (S.D. Tex. Mar. 19, 2012).

Therefore, substantial evidence supported the ALJ's determination that Dr. Kantamani's opinion was unpersuasive.

## V. CONCLUSION

The Court **DENIES** Plaintiff's motion for summary judgment, ECF No. 10, and **GRANTS** the Commissioner's motion for summary judgment, ECF No. 11. The Commissioner's determination that Plaintiff is not disabled is **AFFIRMED** Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**SIGNED** at Houston, Texas, on September 28, 2022.


_Dena Palermo_
**Dena Hanovice Palermo**
**United States Magistrate Judge**